SAMUEL, Judge.
This is a suit by a wife against her husband for a separation from bed and board on the grounds of cruel treatment and intentional nonsupport. The defendant answered in the form of a general denial and reconvened for a separation in his favor on the grounds of abandonment and cruel treatment.
After trial on the merits, judgment was rendered dismissing both plaintiff’s suit and defendant’s reconventional demand upon a finding by the trial court that both parties were guilty of comparable fault. Plaintiff has appealed seeking reversal of that part of the judgment denying her a judicial separation. As defendant has neither appealed nor answered the appeal taken by plaintiff, that is the only issue before this court.
The record consists only of testimony given by the plaintiff, her daughter and the defendant, together with various exhib-its offered in evidence. Plaintiff’s principal complaint is intentional nonsupport. Her net pay was approximately $300 per month while her husband’s was approximately $1,100 per month.
Plaintiff testified: She was in poor health and wished to resign her position but her husband refused to allow her to do so, insisting she must support herself; they had arguments every month when he got paid because he would not give her any money for the house; he would give her only $40 to $50 a month for groceries, occasionally more would be needed and she would have to pay $15 or $20 for additional groceries out of her own money (the money she earned); she also had to pay her own doctor bills and bills from the department store's. On cross examination Mrs. Sutton did admit that her husband paid the utility bills and the mortgage notes in addition to the $40 to $50 per month she said he gave her for groceries.
Her testimony relative to other incidents of cruel treatment was that in July, 1974 the defendant came in about 1 a. m. and ordered her to get out of the house. She fought with him and got a gun telling him to leave her alone. In October, 1974 Mr. Sutton locked her out of the house and she had to call the police to get in. In 1972 she moved out of their mutual bedroom because she had found a woman’s sunglasses, vanity case, cigarette butt and a pair of panties in their bedroom, articles which did not belong to her. While she and her husband did not share the same bedroom since 1972, they did continue to have relations periodically until June, 1974 when Mrs. Sutton moved out of the house. They had separated and reconciled on two or ■three different occasions prior to the institution of this suit.
Plaintiff’s daughter testified only that she knew her mother was sick and wanted to quit her job, and that on occasion she had seen her mother cash her own pay check to pay for groceries.
*426 Defendant testified: He paid the house notes, the second mortgage notes, the lights, the gas, money to get the lawn mowed, newspapers, and all the other bills including hospitalization premiums for his wife and the upkeep, renovation and repairs of rental property owned by the parties. She is the beneficiary of his insurance policies. The only bills his wife paid were for her personal charges at various department stores. He denied ever refusing to support his wife and stated he had offered to agree to permit her to stop working as soon as some rental property was repaired and income-producing. Over the years they had regular domestic problems because of the way Mrs. Sutton handled the money. On one or two occasions she packed up all of his clothing and placed them on the porch. His bills were extremely high because of the necessity of making repairs and renovations to their rental apartments. The grocery bills were high because her son was living with them for a time and her daughter came over almost every Saturday with her children. Mr. Sutton felt that the daughter should provide for the food for her own family. He found it necessary to make a loan from the credit union because of the expense of the apartment repairs.
The record does not reflect that Mr. Sutton was guilty of nonsupport.[1] Plaintiff’s attitude on this subject can best be shown by reference to a portion of her testimony regarding an income tax refund received by both. She testified:
“In June, after we got our income tax check, we divided it. Usually we always divide the income tax check in half, so he gave me my half and he kept his half and he told me he had to pay some bills with his half and I should make groceries in the house. Now, if he had been sick or out of a job I would gladly do that.”
Relative to the first incident of alleged cruel treatment when, according to plaintiff’s testimony, defendant ordered her out of the house and she refused, got a gun and told him to leave her alone, from a reading of the entire record, it appears to us that this was only one of many arguments between the litigants in which plaintiff was quite capable of protecting herself and doing much more. And we note there were other occasions when she did the same thing to her husband by packing up all of his clothing and placing them on the porch.
Relative to the second alleged incident, it appears Mrs. Sutton had a key to their home on the evening she claims to have been locked out, but she could not use it because the screen door was latched. She had not informed her husband of her whereabouts and, as she was not home when he arrived and frequently stayed with her daughter or visited in Plaque-mine, he did not know whether or not she would be home that evening. Consequently, although the Plaquemine visits may have been subsequent to this incident, it does not appear she was deliberately locked out of the house and the remark made in the preceding paragraph as regarding the fact that she was guilty of the same complained of action, is also applicable here.
Concerning the 1972 incident, when Mrs. Sutton found articles not belonging to her in the bedroom, it is significant that, although she moved out of their mutual bedroom, she did continue to periodically engage in sexual relations with her husband. As such conduct indicates forgiveness and condonation, it cannot form the basis for an award of the judgment she seeks[2]
For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

. See Keir v. Digby, 166 La. 92, 116 So. 711.

. Vatter v. Vatter, 131 La. 1073, 60 So. 689; Brown v. Brown, La.App., 260 So.2d 66; Wood v. Wood, La.App., 227 So.2d 656; Robertson w. Robertson, La.App., 215 So.2d 521.